UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DARREN WALLACE, et al., <br> Plaintiffs, <br> v. <br> CITY OF SAN JOSE, <br> Defendant. | Case No. 5:16-cv-04914-HRL <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br> Re: Dkt. No. 56 |

Plaintiffs Darren Wallace, Keith Hart, and Mark Leeds sued the City of San Jose (City), for themselves and on behalf of a collective class of certain firefighter employees, for alleged wage and hour violations under the Fair Labor Standards Act (FLSA or Act), 29 U.S.C. §§ 203, *et seq*. and California Labor Code § 1197. Plaintiffs' claims arise from two types of overtime payments:

(1) **so-called "contractual" overtime**, which refers to pay (governed by a Memorandum of Agreement (MOA) between the City and its firefighter employees) for any hours an employee works beyond his or her regularly scheduled shift hours; and

(2) **FLSA overtime**, which refers to pay for hours an employee works over the maximum hours allowed by the applicable FLSA threshold. As will be discussed, the applicable threshold here is 212 hours in a 28-day work period.

According to plaintiffs, in calculating overtime owed under the FLSA, the City allegedly takes too big a "credit" against FLSA overtime versus contractual overtime, resulting in the

underpayment of FLSA overtime.[1] As described by Wallace, the alleged "credit" issue occurs "where somebody works regular hours below the 212 threshold and then works a significant amount of overtime in the same FLSA cycle"---a circumstance that Wallace described as "very specific" and "fairly unique." (Dkt. 56-2, Decl. of Matthew Pritchard ("Pritchard Decl."), ¶ 2, Ex. A (Wallace Depo. at 27:10-13, 30:22, 31:12-13)). As articulated in their opposition, plaintiffs say that the alleged underpayment occurs when firefighters work some overtime hours below the FLSA threshold and some overtime hours above that threshold. (Dkt. 57, Opp. at 1).

The court previously granted plaintiffs' motion for conditional certification, and then subsequently granted the City's motion for decertification. Thus, Wallace, Hart, and Leeds are the only claimants before the court, and the sole remaining claim is for the alleged underpayment of FLSA overtime. Each plaintiff claims that, over the past several years, he has been shortchanged in at least one pay period.

The City now moves for summary judgment, arguing that it has exceeded its FLSA overtime obligations for every pay period at issue and that plaintiffs have failed to present evidence raising a genuine issue of material fact as to their overtime "credit" theory. Plaintiffs oppose the motion.[2] Upon consideration of the moving and responding papers,[3] as well as the arguments of counsel, the court grants the motion.

**BACKGROUND**

The record reveals no material fact disputes. In their opposition, plaintiffs cite a number of purported "fact" disputes, most of which pertain to the sole legal issue presented by the City's

---

[1] The complaint also alleged minimum wage violations under state and federal law. However, plaintiffs advise that they are no longer pursuing that claim. Accordingly, that claim is dismissed, and the City's motion for summary judgment on that issue is denied as moot. Insofar as documents submitted by the City for judicial notice pertain solely to the minimum wage issue, the City's request for judicial notice is also deemed moot.

[2] After filing their opposition brief, plaintiffs submitted a belated notice of additional authorities they say they meant to include in their papers. There being no objection to that late filing or any apparent prejudice to the City (it cited some of the same authorities), the court has accepted and considered those papers.

[3] The court will separately issue its rulings on defendant's evidentiary objections.

motion: Whether defendant correctly calculated and paid the FLSA overtime owed to plaintiffs.[4]

Plaintiffs are employees of the City's Fire Department and are assigned to work 28-day work periods. They are paid once every two weeks (i.e., twice per work period). They are entitled to FLSA overtime pay for every hour above 212 hours that they work in a single work period.

Defendant sets compensation for its firefighter employees in accordance with an MOA negotiated by the International Association of Fire Fighters (IAFF), the collective bargaining unit that represents the City's firefighters. (Dkt. 56-4, Decl. of Allison Suggs ("Suggs Decl.") ¶¶ 5-6). A firefighter's pay includes various components:

- **Base hourly wages**: These are wages that the City says it pays, exclusive of premium payments, overtime, and other non-hourly-wage payments.

- **Premium payments (or what the parties also sometimes refer to as "add-on" payments)**: These are described as various extra wages the City pays based on additional training and skill, or as a work incentive. The City says that these are generally fixed payments paid each pay period, and are not tied to the number of hours the firefighter may have worked.

- **Contractual overtime**: As discussed above, this is compensation paid for any hours an employee works beyond his or her regularly scheduled shift hours. According to an MOA between the City and its firefighter employees, the City pays contractual overtime of 1.5 times an employee's base hourly rate for every hour worked outside the employee's regularly scheduled work shift.

- **FLSA overtime**: As discussed above, this is pay for hours an employee works above the 212-hour FLSA threshold applicable to each of the plaintiffs.

(Dkt. 56-3, Decl. of Damian Beatty ("Beatty Decl."), ¶¶ 4-5; Dkt. 56-4, Suggs Decl. ¶ 7).[5]

In determining its FLSA overtime obligations, the City says it employs a "dual

---

[4] Plaintiffs' other articulated "fact" disputes include whether Wallace "used" or "created" a certain spreadsheet or whether any putative class members were affected by the so-called overtime "credit" issue. Neither of these purported disputes are material to the disposition of the present motion.

[5] The City also identifies "other" non-premium extra payments, such as for vacation and sick leave. Although the City included these other payments in its initial calculations presented in its opening brief, plaintiffs argue (and the City agrees) that those payments should have been left out. To that end, the City provides its corrected calculations in its reply brief. This order does not consider those other payments. As will be discussed, the City maintains that the exclusion of those payments makes no difference to the end result anyway.

3

calculation" method where it (1) calculates payments owed for straight time and contractual overtime under the MOA, (2) separately calculates payments owed for straight time and overtime under the FLSA, and (3) pays the higher of the two. So, if the amount paid to a firefighter per the MOA is less than the amount required to be paid under the FLSA calculation, the City makes an "FLSA overtime adjustment" on the employee's pay stub, meaning that the firefighter's pay is increased by the difference. Conversely, if the amount the firefighter was paid pursuant to the MOA exceeds what the City calculates would be owed under the FLSA, the City says no pay adjustment is made. (Beatty Decl. ¶ 6).

Wallace claims that the City failed to pay him all the FLSA overtime owed in the pay period ending August 13, 2016. Hart claims that he was underpaid in two pay periods, ending October 11, 2014 and November 7, 2015. And, Leeds claims that he was underpaid in three pay periods, ending August 16, 2014, November 7, 2015, and December 5, 2015.

There is no apparent dispute as to the hours the plaintiffs worked in these periods or the amounts the City paid each of them for all overtime and non-overtime hours they worked. Additionally, plaintiffs agree that the "dual calculation" method is a permissible approach. As discussed above, they further agree that "[t]he calculation that the City is using to determine and pay the FLSA rate is correct," and confirm that "[their] complaint is *not* that the City failed to calculate or pay the FLSA hourly rate correctly." (Dkt. 57, Opp. at 6:6-7) (emphasis added).

Nonetheless, plaintiffs contend that the City is not performing the "dual calculation" method correctly, and they take issue with the FLSA pay rate and calculations that the City presents in its motion, claiming that those calculations do not correspond to what the City actually does. Plaintiffs argue that, to defeat the City's summary judgment motion, they need only show that they were underpaid in some work periods. (Opp. at 8). The City maintains that for each pay period in question, it paid each plaintiff at least what is owed under the FLSA; and, in most instances, the City claims that it paid plaintiffs more than what the FLSA requires---by amounts ranging from several hundred to several thousand dollars. Further, the City contends that plaintiffs have no evidence to substantiate allegations that the City violated the FLSA by taking improper overtime "credits."

4

**LEGAL STANDARD**

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id*. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id.*

**DISCUSSION**

The FLSA generally requires covered employers to pay employees overtime compensation for work over forty hours a week. 29 U.S.C. § 207(a)(1). Different overtime thresholds, however, apply to firefighters (and law enforcement), and the City may (as it has done) establish a 28-day

FLSA work period. *Id.* § 207(k). Under this arrangement, the City is obliged to pay firefighters an overtime rate for every hour they work above 212 hours in a 28-day work period. *Id.* § 207(k)(1); 29 C.F.R. § 553.230(a). "The FLSA guarantees minimum overtime compensation" and "is not a supplement to contractual compensation." *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1307 (10th Cir. 2011). "If an employee's contractual pay exceeds what the FLSA would require, an employer has no additional FLSA liability." *Id.* (citing 29 U.S.C. § 216(b)).

Generally to determine liability in a dispute concerning overtime pay, what is required is (1) to determine the FLSA regular rate of pay; and (2) using that regular rate, determine what amount of FLSA overtime compensation, if any, is due. Thus, determining the regular rate of pay is key. *See Walling v. Youngerman-Reynolds Hardwood Co., Inc.*, 325 U.S. 419, 424 (1945) ("The keystone of Section 7(a) is the regular rate of compensation. On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes. The proper determination of that rate is therefore of prime importance."). And, indeed, that is where the City's analysis begins.

For present purposes, the court focuses on plaintiff Hart's pay for the period ending November 7, 2015, because that is the one plaintiffs cite as an example in their opposition, and it is the example that also was the focus at oral argument. As stated above, there is no apparent dispute as to the number of hours Hart worked or the amount he was paid by the City. In that period, the City says that Hart's base wage was $27.01. (Beatty Decl., ¶ 9, Ex. C). He worked 289 hours and was paid $11,568.84 as follows:

- Base hourly wages: $6,049.60
- Premium pay: $1,589.70
- Contractual overtime: 3,929.54

(Beatty Decl., Ex. C; Dkt. 62, Reply at 18). Of the 289 hours worked, there is no apparent dispute that 97 of those hours were overtime hours. (Beatty Decl., Ex. C).

Following a formula prescribed by a Department of Labor (DOL) regulation, 29 C.F.R. §

778.110(b),[6] defendant says that plaintiffs' regular rate is calculated as follows:

> regular rate = [(base hourly wage) x (total hours worked in the pay period) + (all premium payments)] ÷ (total hours worked in pay period)

Applying this formula to Hart, the City says this would mean his regular hourly rate for the period ending November 7, 2015 was **$32.51069**, calculated as follows: [$27.01 (base hourly wage) x 289 (hours worked) + $1,589.70 (premium pay)] ÷ 289 (hours worked) = $32.51069. Based on that rate, the City says the amount owed to Hart under the FLSA for this period is **$10,647.25**, calculated as follows:

| | |
|---|---|
| **$6,892.27 straight pay** | (straight time hours (212) x regular rate ($32.51069)) |
| + | |
| **$3,754.98 overtime pay** | (FLSA overtime hours (77) x regular rate (($32.51069) x 1.5) |

So the upshot, says the City, is that for this period, it paid Hart **$921.59 more** than what the FLSA required.

Citing to the same DOL regulation (29 C.F.R. § 778.110(b)) that is the basis of defendant's calculation, plaintiffs argue that defendant's proffered calculation is improper because it (reportedly) treats the premium/add-on payments as a bonus. Here, plaintiffs point out (as does the City) that a firefighter's premium pay is a fixed sum paid each pay period, no matter what hours the firefighter worked. (Dkt. 57, Opp. at 4:11-13; Dkt. 57-2, Decl. of Carol Koenig ("Koenig Decl.") ¶ 3). Their apparent point is that premium/add-on pay therefore should be treated as part of a firefighter's regular pay, not a special "bonus," for purposes of calculating the FLSA regular rate. *See* 29 C.F.R. § 778.208 (providing that that certain special payments---e.g., "discretionary bonuses, gifts and payments in the nature of gifts on special occasions,

---

[6] That regulation provides the following hypothetical: "Hourly rate and bonus. If the employee receives, in addition to the earnings computed at the $12 hourly rate, a production bonus of $46 for the week, the regular hourly rate of pay is $13 an hour (46 hours at $12 yields $552; the addition of the $46 bonus makes a total of $598; this total divided by 46 hours yields a regular rate of $13). The employee is then entitled to be paid a total wage of $637 for 46 hours (46 hours at $13 plus 6 hours at $6.50, or 40 hours at $13 plus 6 hours at $19.50)."

contributions by the employer to certain welfare plans and payments made by the employer pursuant to certain profit-sharing, thrift and savings plans"---are not part of the regular rate) *See also Chavez*, 630 F.3d at 1312 ("Sums paid as a reward for service, 'the amounts of which are *not* measured by or dependent on hours worked, production, or efficiency,' are not part of the regular rate.") (emphasis added).

The court won't belabor this point. As alluded to above, and as will be seen in the following discussion, the calculation of the regular rate, as actually performed by the City, is not the basis for plaintiffs' complaint. Suffice to say that the City's calculation appears to treat the add-on payments as a "production bonus"; and, "DOL views a lump-sum production bonus as general compensation rather than additional hourly compensation." *Chavez*, 630 F.3d at 1312. So, in other words, the City's proffered calculation appears to do exactly what plaintiffs say it should, i.e., treat the premium payments as part of Hart's regular pay.[7]

More compelling is plaintiffs' primary contention that the City's proffered calculation is not a reliable indicator of the City's FLSA obligations because that calculation doesn't reflect what the City actually does in determining the FLSA overtime that is paid. And, notably, plaintiffs don't take issue with what they say the City actually does in calculating a firefighter's regular rate of pay. Plaintiffs contend that the City's proffered calculation is a non-starter because it is based on the notion that the FLSA regular rate will vary from pay period to pay period, depending upon the number of hours worked in that period. Not so, say plaintiffs. According to them, as part of a prior settlement between the IAFF and the City, the FLSA regular rate is a fixed sum that essentially is based on an average number of hours (i.e., 224), not actual hours worked. (Dkt. 57-1, Declaration of Darren Wallace ("Wallace Decl.") ¶¶ 7, 10-11). Under what the court will refer to as this "fixed-rate arrangement," plaintiffs contend that Hart's actual FLSA regular rate of pay for the period ending November 7, 2015 is $34, and not $32.51 as indicated by the

---

[7] Confusingly, elsewhere in their opposition, plaintiffs seem to argue that the premium payments are not lump-sum payments and do depend on the number of hours worked. (Opp. at 8:25-26). But, this argument is directly contrary to plaintiffs' assertion several pages earlier in their opposition that their premium/add-on payments "are part of the Plaintiffs' regular earnings" that they receive "regardless of whether or not they work each hour---or any hour---during the 28-day FLSA work period." (Id. at 4:11-13; Koenig Decl. ¶ 3).

8

City's proffered calculation.

The City asserts numerous evidentiary objections to plaintiffs' proffered evidence of the fixed-rate arrangement---albeit, the City (sort of) seemingly acknowledges that it might "internally" calculate its FLSA obligations using a fixed rate. (Dkt. 63, Reply at 8). But, the point, defendant argues, is that the court cannot be guided by nomenclature in contractual arrangements nor by *average* hours worked, but by the *actual* hours that are worked. So, defendant stands by its proffered calculation as a proper reflection of what the FLSA requires and as proof that it pays its employees more than that. Plaintiffs maintain that the court must look to what they say the City actually does under their employment contract.

On this point, the court finds plaintiffs are more persuasive. In *Youngerman-Reynolds Hardwood*, the Supreme Court described the regular rate as "the hourly rate *actually* paid the employee for the *normal, non-overtime work* for which he is employed." 325 U.S. at 424 (emphasis added). What this court takes from *Youngerman-Reynolds Hardwood* is that (1) an employee and employer are free to agree upon pay rates, so long as minimum hourly rates under the law are satisfied, (i.e., wage contracts can't set a rate lower than the minimum required by law); and (2) it is the substance of the payments, rather than the labels given to them, that governs the FLSA overtime calculation. *Id.* at 424-25; *see also Brunozzi v. Cable Communications, Inc.*, 851 F.3d 990, 996 (9th Cir. 2017) ("The 'regular rate' of pay under the [FLSA] cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; *it must be drawn from what happens under the employment contract*.") (citations omitted; emphasis added); *Chavez*, 630 F.3d at 1305 (stating that *Youngerman-Reynolds Hardwood* "means that a contract cannot designate an artificially low regular rate in order to reduce the minimum statutory overtime due."). The City points out that *Chavez* held that the proper divisor in figuring the regular rate is "the actual hours worked." 630 F.3d at 1312. But, as far as the court can tell, *Chavez* did not involve the type of fixed-rate arrangement that plaintiffs allege governs here.

Defendant continues to question the soundness of plaintiff's evidentiary showing for the fixed-rate arrangement. But, even obliging plaintiffs on this point and accepting, at face value, their assertion that Hart's regular rate was $34, the City maintains that it still paid Hart several

9

hundred more than what the FLSA requires. Plugging the $34 rate into its formula, the City says that the FLSA would have required **$11,135.00** payment to Hart as follows:

- **$7,208 straight pay** (straight time hours (212) x regular rate ($34))
+
- **$3,927 overtime pay** (FLSA overtime hours (77) x regular rate ($34) x 1.5).

Thus, according to the City, even under plaintiff's claimed fixed regular rate of pay, the amount paid to Hart, **$11,568.84**, is still **$433.84 more** than what was owed under the FLSA.

To be clear, plaintiffs emphasize that they have no problem with the $34 rate of pay. Instead, plaintiffs say that their "complaint is that the City failed to pay the full amount that the FLSA required it to pay for some of the hours worked outside of the Plaintiffs' regular work schedule (*specifically* for those hours of work that fall outside the Plaintiffs' regular schedule but fall *under* the FLSA threshold)." (Opp. at 6) (emphasis added). Elaborating, plaintiffs claim that the City's "mistake" is that "[w]hen the City calculates the total amount the FLSA requires it to pay, the City fails to include the base hourly rate for the extra hours that fell *under* the FLSA threshold." (*Id.*).

In plaintiffs' view, the "correct" way to calculate the City's overtime obligation is as follows:

**Contract pay $3,928.50** = 97 hours overtime x $27 (base rate) x 1.5

**FLSA pay $4,467.00** =       20 hours x $27 (base rate) = $540.00
+
77 hours x $34 (FLSA regular rate) x 1.5 = $3,927

**Amount still owed $538.50** = $4,467.00-$3,928.50

Plaintiffs offer no clear explanation for these calculations. Adding to the confusion, plaintiffs refer the court to a chart purporting to show the "correct" calculation, but say nothing more about the chart in their brief. The chart is appended as Ex. B to the declaration of plaintiffs' counsel, Carol Koenig. Koenig's declaration, however, says nothing at all about this chart. Moreover, the chart doesn't address Hart's pay period ending November 7, 2015—the example that plaintiffs cite in their brief.

10

Plaintiffs also offer no authority for their proffered calculation, other than a citation to a U.S. Supreme Court case for the general proposition that "[t]he FLSA requires that the City pay Plaintiffs for every hour that they work." (Opp. at 6:11-13). *See Tennessee Coal, Iron & Railroad Co. v. Muscoda Local 123*, 321 U.S. 590 (1945), superceded by the Portal-to-Portal Act as stated in *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513 (2014). In *Tennessee Coal*, the issue was whether time spent by iron ore miners in traveling in underground mines to and from the work site constituted work or employment for which compensation must be paid under the FLSA. Noting that the FLSA is "necessarily indicative of a Congressional intention to guarantee either regular or overtime compensation for all actual work or employment," the court concluded that the underground travel in ore mines was compensable work. *Id.* at 597-99. This court finds no material guidance in *Tennessee Coal* on the present motion.

Defendant says that, in asserting that the FLSA requires the City to pay for hours *below* the FLSA threshold, plaintiffs are making a so-called "gap time" claim that courts have held are not cognizable under the FLSA. "'Gap time' refers to time that is not covered by the overtime provisions because the time exceeds the employer's internal policy, but does not exceed the straight-time limits under the FLSA." *Perez v. Wells Fargo & Co.*, 75 F. Supp.3d 1184, 1188 (N.D. Cal. 2014). Relevant to the discussion here, "overtime gap time" claims are "claims in which an employee has worked over [the relevant overtime threshold] in a given [work period] but seeks recovery for unpaid time under [that threshold]. *Perez*, 75 F. Supp.3d at 1188. There is a split among the circuits as to whether gap time claims are cognizable, and the Ninth Circuit apparently has not ruled on the issue. *See id.* And, insofar as plaintiffs' opposition indeed suggests that they are making "gap time" claims, this court agrees with others in the Ninth Circuit that hold that that such claims are not cognizable under the FLSA. *See, e.g., Sargent v. HG Staffing, LLC*, 185 F.3d 1063, 1078-79 (D. Nev. 2016); *Perez*, 75 F. Supp.3d at 1188-90.

So, at oral argument, the court put it to plaintiffs to explain exactly what their overtime "credit" theory is. And here we come, finally, to the apparent heart of the matter. Plaintiffs said they agree that FLSA overtime is not implicated for hours below the 212-hour threshold. To the extent their papers suggested otherwise, plaintiffs clarified that is not what they meant; and, they

11

insist they are not making a "gap time" claim. The "better way" to demonstrate their claim, plaintiffs proposed, is to focus only on overtime hours above the FLSA threshold. Looking only at those hours, plaintiffs say the proper way to determine FLSA overtime pay is to compare (1) what is owed under the contractual rate for those hours with (2) what is owed under the FLSA rate for those hours. Then, plaintiffs agree that, under 29 U.S.C. § 207(e),[8] the City may take a half-time credit (0.5) for what is owed for overtime hours below the FLSA threshold and deduct that sum from the FLSA overtime pay. The problem, say plaintiffs, is that the City (allegedly) takes a 1.5 credit for contractual overtime and deducts that entire amount from the sum owed for FLSA overtime.

To illustrate their theory, plaintiffs' counsel handed the court charts she said she prepared the day before the hearing. (Defense counsel apparently were provided with copies that morning.) While the court noted that oral argument was not the time to be presenting new evidence, plaintiff's counsel stated that the charts were prepared in response to the City's reply arguments (i.e., to demonstrate that plaintiffs are not presenting a "gap time" claim).[9]

According to the chart for Hart's pay period ending November 7, 2015[10]:

- Hart's base rate was $27;
- His FLSA regular rate was $34; and
- Hart worked a total of 97 overtime hours, 20 of which were under the FLSA threshold, and 77 of which were over the threshold.

Based on these numbers, the chart reflects that for the 77 overtime hours above the threshold, Hart

---

[8] Although they do not say so, plaintiffs apparently are referring here to 29 U.S.C. § 207(e)(5), which provides that the "'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, *but shall not be deemed to include* . . . extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) or in excess of the employee's normal working hours or regular working hours, as the case may be." (emphasis added).

[9] Inasmuch as the court discussed and considered them, the Clerk is directed to docket the plaintiffs' charts handed to the court at the motion hearing.

[10] The chart's title says it concerns the pay period ending November 7, 2016. The court assumes this is a typographical error.

12

was paid $3,118.50 for contractual overtime (77 hours x $27 x 1.5), and was owed $3,927.00 (77 hours x $34 x 1.5) for FLSA overtime, meaning that the City would owe $808.50 more under the FLSA than under the contract rate. But, allowing for a 0.5 credit for the 20 hours of overtime Hart worked below the threshold, plaintiffs calculate that the City would be entitled to deduct $270 from the FLSA overtime amount (20 hours x $27 x 0.5). But, even with that credit, plaintiffs claim that the City still owes Hart $538.50 (i.e., $808.50-$270.00) to make up the difference between the contract overtime pay and the FLSA overtime pay. In other words, according to plaintiffs' theory, Hart should have been paid $3,657 for overtime.

However, paystub records submitted by the City indicate that for the period ending November 7, 2015, Hart was paid $3,929.54 for contractual overtime. (Beatty Decl., ¶ 9, Ex. C). That's slightly higher than the $3,927.00 that, according to plaintiffs' own chart, the City owed to Hart under the FLSA, even *without* taking the half-time credit plaintiffs agree the City is entitled to deduct. Plaintiffs have presented no evidence refuting the City's pay records or even suggesting that the City, in fact, took an allegedly overinflated credit in determining Hart's overtime pay for that period.

Although not specifically discussed at the hearing, plaintiffs' charts also purport to present the same analysis for Wallace's pay period ending August 13, 2016. The upshot of the chart's analysis is that Wallace was paid $8,873.86 at the contract rate for overtime hours above the threshold; he was owed $9,821.86 for those same hours under the FLSA; and, even accounting for a half-time credit for overtime hours below the threshold, plaintiffs claim that the City still owes Wallace $265.40. But, according to pay records submitted by the City, Wallace was paid $10,922.40 in contractual overtime for that period, which is well over what plaintiffs' chart says he was owed under the contract or the FLSA. (Beatty Decl., ¶ 7, Ex. A). Again, plaintiffs have presented no evidence refuting the City's pay records or even suggesting that the City took an allegedly overinflated credit in determining Wallace's overtime pay for that period.

As for Leeds, plaintiffs' chart presents the same analysis for the pay period November 8, 2015 to December 5, 2015. According to the chart, Leeds was paid $4,218.75 at the contract rate for hours above the threshold; he was owed $5,247.45 under the FLSA for those same hours; and,

13

even accounting for a $93.75 half-time credit for overtime hours below the threshold, the City still owes him $187.30 (for a total of $4,406.05 in overtime). Pay records submitted by the City, however, show that Leeds was paid $4,500 for contractual overtime payments. (Beatty Decl., ¶ 12, Ex. F). Again, plaintiffs have presented no evidence refuting the City's pay records or even suggesting that the City took an allegedly overinflated credit in determining Leeds's overtime pay for that period.

The City flatly denies taking a "credit" or making the deductions plaintiffs allege. And, Damian Beatty, (the City's Supervising Accountant in the Accounting Division's payroll work group since January 2014) avers that the City has no such practice. (Beatty Decl. ¶ 13).

As discussed above, plaintiffs contend that to defeat the City's summary judgment motion, they need only show that they were underpaid in some pay periods. But, plaintiffs cannot rest upon mere allegations or denials of the adverse party's evidence. *See Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. Instead, they are required to produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id*. Was there that evidence?

Plaintiffs have submitted various charts, apparently prepared by their counsel and reportedly based on how the City actually calculates FLSA overtime pay. But, plaintiffs have not presented any evidence as to where the underlying information came from, much less any evidence that the City actually takes the alleged improper "credit" against FLSA overtime. Indeed, at the hearing, plaintiffs' counsel stated that they could not tell the court whether or not the City is taking the credit, or how the City does its calculations. Plaintiffs insist, however, that the math bears out their theory and that they know what the proper FLSA overtime numbers should be. But, they have not managed to persuade that their theory, as presented in their papers, is borne out by the math; and, the City's submitted pay records tend to refute allegations that plaintiffs were shortchanged on FLSA overtime. At oral argument, plaintiffs indicated that, at trial, they could present evidence, including pay stubs, expert testimony, and Wallace's testimony, to show what the City pays and how it pays. However, the time for the presentation of such evidence---at least sufficient to raise a genuine issue of material fact for trial---was now. For the reasons discussed above, the court concludes that plaintiffs have not done so and that the City's motion for

14

summary judgment must therefore be granted.

**ORDER**

Based on the foregoing, defendant's motion for summary judgment is granted. The clerk shall enter judgment accordingly and close this file.

SO ORDERED.

Dated: May 14, 2018

HOWARD R. LLOYD
United States Magistrate Judge